The next matter on our calendar is United States v. Jeffrey Herring. Thank you. Morning. Good morning, your honors. May it please the court. Troy A. Smith for Appellant Jeffrey Herring. I appeared as the defense counsel before the district court at the trial, as well as my esteemed colleague and adversary Maureen Comey for the government. Were you the trial attorney? Yes, your honor. Your honor, the district court erred in precluding the statement of co-conspirator Deanna Duncan that she observed cooperating witness and testifying witness, Hummel, pointing a firearm at the person on the couch moments before he was shot dead. Under what exceptions in the hearsay rule would you have had the judge admit it? Statements against penal interest under 804b3, your honor. But what was, why was it against her penal interest? Your honor, as this court has determined time and time again, a reasonable person in the declarant's shoes here, Miss Duncan, would have perceived that the statement as being detrimental to her penal interest. Here the district court must evaluate each case on a case by case basis. The district court made a finding of fact that at best, this was a neutral statement. The finding of fact, in the findings of fact, the court stated, how does this add to her exposure? I point, your honor, your honors to what Justice Scalia said in Williamson, that a declarant's statement is not magically transformed from a statement against penal interest into one that is inadmissible merely because the declarant names or implicates another individual. Miss Duncan admitted that she had put the plan together to commit this offense, that she had driven her vehicle with the other co-conspirators to commit this offense, and that she, in fact, went into the home during the commission of this offense. Only after being hypnotized did she say she went into the home. Actually, your honor, I disagree with that. She was proffered on six occasions prior to that, your honor. Each and every time she indicated that she was inside of the doorway, she was in the home, it was only the last proffer which the government indicates that she indicated, that she said that she went further, that she went into one of the bedrooms. Rifle through the drawers. Yes, your honor. What about corroboration of her statements? And whether they were otherwise believable, given her history of shifting stories? The Disher court, your honor, applied the two-part test.  And nothing in the defense, in the appellant's brief, indicated that the two-part test shouldn't be applied, but the two-part test should be whether or not the statement was sufficiently corroborated. And next, was the declarant deemed to be trustworthy? Turning to the first test, your honor, the Disher court determined that nothing in the record corroborated the statement. I disagree with the court's assessment on that. Hummel, the individual that Ms. Duncan indicated was pointing the firearm at the person on the couch, admitted a trial to being told that Michael Northcote may have had a gun. He went so far as to say that he, in fact, approached the couch unarmed and stood next to Mr. Northcote. And additionally... That's not corroboration. Corroboration is that Mr. Hummel had said, I shot him. All right, additionally. I understand, your honor. Additionally. You were going to say something else. It's corroborated in the fact that Hummel indicates that he went so far as to be standing next to this individual and he says he was aware that he may have possessed a firearm, but he was standing next to him unarmed. I agree, your honor, that he's not admitting that he's the shooter, but that part that Ms. Duncan says that he actually, she sees him go to the couch holding a firearm, it's corroborated with the... Did he deny shooting? Of course, your honor. So that's not corroboration. So what is the next piece of corroboration? The district court gave short shrift to the fact that... The government proffered the witness six separate times.  They believed the witness to be trustworthy, to be corroborated, had investigator Young testify under oath in the grand jury. You think because they did six proffers they found her trustworthy, not the contrary? They did six different proffers and they argued at some point that her statements were not the same at these six different proffers. Why do you take from the fact that there were six proffers that they found her trustworthy? The fact that they put it on the record in front of a grand jury that her statement was sufficiently corroborated and deemed to be trustworthy? They didn't put her on at the trial, did they? They did not, your honor. And it was not during the six proffers that they made a determination that she wasn't trustworthy. It was after that fact. And you may not know the answer to this, although I guess you would know the answer to this, was her statement that Hummel did the shooting, was that presented to the grand jury? Yes, your honor. And in what context? Through the New York State police investigator.  Since the jury was charged on aiding and abetting and felony murder, why isn't this harmless error the refusal to admit the statement? Since the jury could have found Mr. Herring guilty of aiding and abetting since there's no question that he was in the room in any event. Your honor, what you're saying, the jury was also instructed on felony murder with respect to New York State law under penal law section 125.25 and the affirmative defense that exists for felony murder that if the defendant knew or reasonably did not know that anyone was armed, that would be an affirmative defense. Your honor, if Mr. Herring was denied his right to compulsory process to present a defense, if the jury heard from Hummel, I'm sorry, if the jury heard from Deanna Duncan or the statement of Deanna Duncan that Hummel was the shooter, it would call into question the very testimony of the cooperating witness. The evidence at trial, specifically from Hummel, indicated that everybody was wearing, well, all the witnesses testified that everyone was wearing masks, that not everyone went inside the Northcote home, that Reynolds did not go inside the Northcote home, according to Hummel, but he was wearing a mask. Herring testified that he abandoned the plan once he realized that there was somebody home. If the jury were allowed to consider that Hummel, the very testifying witness that points the finger at Herring, the jury would have been able to determine that one, Hummel, wasn't being credible, that wasn't credible, neither were the other cooperating witnesses, and would have credited or could have credited Mr. Herring, and Mr. Herring was denied the opportunity to be able to present this evidence. Thank you. You've reserved two minutes for about a little while. Thank you, Your Honor. Good morning. Good morning. May it please the Court, my name is Maureen Comey, and I represent the United States on this appeal, as I did at the trial before the district judge. I'd like to focus my argument on the main issue that Mr. Smith focused on, which is whether or not Judge Karras abused his discretion when preventing the defense from introducing Deanna Duncan's unreliable proffer statement. And just to step back and frame this discussion, I want to be clear about what that specific statement is. May I ask you, was the statement introduced to the grand jury? It was, Your Honor. That specific statement, to be clear, was not that Hummel was in fact the shooter. Throughout all of her proffers, Ms. Duncan was very clear that she never saw who shot the gun, she never saw who shot Michael Northcote. The specific statement is that while Duncan was inside of Michael Northcote's home, she saw Jesse Hummel pointing a gun at someone on the couch, and she couldn't even say who that person was. At first, she thought that the person was Sonny, Michael Northcote's roommate, and then she backed off of that and said she wasn't sure who it was. So that is the statement that the defendant was trying to get in at trial. And Judge Karras in no way abused his discretion in denying that application, in denying them from putting that statement in, for three reasons. First, that statement that Duncan saw someone else pointing a gun during the robbery was not against her penal interest. Second, the defense offered no corroboration whatsoever of that specific statement that Hummel had a gun, not to mention pointed it at anybody, during the course of the robbery. And third, Judge Karras was absolutely correct to find that at the time of trial, Ms. Duncan was not a trustworthy declarant. If I may walk through briefly each of those three points, because Ms. Duncan's statement was made in the context of a broader confession to her culpability in the robbery and murder of Michael Northcote, the Supreme Court's decision in Williamson provides the framework for deciding whether or not that specific statement was against her penal interest. And in doing so, it's important to look at whether that specific statement was so against her interest and so likely to inculpate her that no reasonable person would have said it unless it was true. And when analyzing that kind of statement... Let me interrupt for just a second. So in looking at the statement, you know, Williamson talks about kind of a bit-by-bit analysis, but still, to understand a narrative, there are several statements that may be taken into account, and it's not immediately obvious why this wasn't part, an integral part of her narrative. Certainly, Your Honor. So I think the key part of her narrative was the fact that she participated in the planning of this robbery. She identifies all of the people who she went to this robbery with. She identifies who the target was, that the target was marijuana. And then she provides details about what happened afterwards, splitting up the loot afterwards. Why isn't that against her penal interest? It puts her at the scene of the crime. So, Your Honor, all of the other statements do go against her penal interest, but the specific statement that one other person, Jesse Hummel, possessed a gun and pointed it during that robbery, is not against her interest because it doesn't matter whether or not it was Jesse Hummel or someone else. The hearing could be Mr. Hummel, could be any person. Exactly, Your Honor. It does nothing to further Ms. Duncan's culpability. She's already admitted that she participated in a robbery during which another robber shot and killed someone. She would have no interest to lie, though, if it had nothing to do with her penal interest. Well, Your Honor, this is the precise concern that the Williamson court warned courts about. When looking at a declarant who is making a statement that tends to heat blame on someone else, on another co-conspirator, the Supreme Court in Williamson said we should be particularly skeptical of those types of statements because when made to law enforcement, the incentive is to make myself, here Ms. Duncan, look better by making someone else look more guilty. And that's exactly what she was doing in this statement. She was saying that I was a passive participant, I was just standing right at the door trying to make herself look less culpable. But still, she picked on Hummel and not Herring to make herself look less guilty. And whether it's Hummel or Herring makes no difference to her penal interest. It does not matter to her whether it was Hummel, whether it was Herring, or whether it was someone else entirely. Reliability is exactly the same, is your point? Exactly, Your Honor. Exactly, Your Honor. And even if this statement were against her penal interest somehow, this court has made clear in Doyle and many other cases that the proponent of the evidence bears the burden of providing a clear indicia of reliability that needs to be strong, corroborating the specific statement. And here that specific statement... Why did you introduce that? I don't know who did it, but why did you introduce that to the grand jury? Well, Your Honor, it was out of fairness. It's unclear whether or not we may not have been actually required to, but we didn't want to be cherry picking the evidence that our witnesses were telling us. So we presented a fair accounting of all of the evidence that we had been provided by our witnesses. But we by no means asked the grand jury to believe that Hummel was the shooter. To the contrary, we asked the grand jury to return an indictment that specifically alleged that Jeffrey Herring was the shooter, and they did so. And what we asked the grand jury to believe at the time was that Duncan was accurate in her description of how the robbery was planned, who was participating in it, that there would be guns there, and then the aftermath of going back and splitting up the loot at Gabe Rodriguez's house later on. But there is absolutely no corroboration for the statement that Jesse Hummel ever possessed a gun inside of Michael Northcote's home. To the contrary, as this Court in Salvador made clear, when conducting that particular analysis, we can look to contradictory evidence. And here there's a whole bunch of contradictory evidence. Three cooperating witnesses, Mark Mack, Jesse Hummel himself, and William Lewis, all testified at the trial, and all three of them agreed that Jesse Hummel did not bring a gun inside of Michael Northcote's home, that Jeffrey Herring did bring a gun inside of the home, and all three of them testified that they saw with their own eyes as Jeffrey Herring shot and killed Michael Northcote during the robbery. So there is nothing to contradict that evidence that makes clear that Jesse Hummel did not, in fact, have a gun inside of that home. And beyond that, the defense has offered nothing to support the trustworthiness of Ms. Duncan. Now, at the time that her testimony or her information was presented to the grand jury, the government obviously did not ask the grand jury to believe the particular statement that Jesse Hummel had pointed a gun at Michael Northcote. But then later on, it became very clear that she had not been entirely forthcoming and that she had not been entirely truthful. Most prominently, she had minimized her own role in the robbery. She had claimed that she had just been standing in the door, although she had been a driver to and from. She claimed she was just standing in the door or just inside the door. Let me ask, just in terms of a statement against a penal interest, if the unavailable declarant also describes other circumstances, that there was someone lying on the couch, that other people kind of went into the bedroom, that there was a child around, those statements, those descriptors aren't necessarily against penal interest. Is it improper for the court to admit those as well? It might be, Your Honor. They would also be statements that are neutral as to the declarant's own penal interest. The inquiry needs to be about each specific statement and whether or not he – So is it only a confession that gets admitted or something that says, yes, I agreed, I planned, I went? Because they do give credibility in terms of context and knowledge of specifics in a way that a simple confession may not. Yes, Your Honor, that's true. But the question that Williamson tells us to ask is whether each specific statement tends to really expose the declarant to criminal liability. So the question is, would this particular piece of the statement, would this particular piece of the puzzle, tend to increase the chances of criminal exposure? And here there are statements about planning the robbery, going to the robbery, knowing that there would be guns. Those statements would all very clearly be against Duncan's penal interest, but I think the statements about some specific details would be at best neutral as to her interests. But the government agrees that any proffer statement that is against the profferee's, profferer's penal interest is admissible, potentially. So the fact that it's a proffer statement subject to a proffer agreement doesn't render it inadmissible by itself. Well, Your Honor, we do think that the fact that the statement was made pursuant to a proffer agreement is important context for whether or not the declarant would believe that the statement is against her penal interest. That's what I'm trying to understand. So here Ms. Duncan was making the statement under an agreement that said that the prosecution could not use her statements against her in their case. So that even lessens the likelihood that any statements that she made implicating herself during those proffer statements, during those proffer sessions, would have exposed her to criminal liability. And this court has noted in dicta in Doyle, I believe footnote 16, that that is an important context and that in many cases statements... Why isn't that your first argument? Well, Your Honor, I think it's an important piece of the context, but I also think that Williamson pretty clearly decides the case, as did Judge Karras. And finally, if I may wrap up with the point about harmless error, as I think the panel has already acknowledged, even if Jesse Hummel's statement had been presented before the jury, it would not have changed the outcome of this trial. First of all, Ms. Duncan's statement does not change the evidence about who the shooter was. Again, she did not actually see the shooter. And even if the jury had decided that Jesse Hummel had in fact been the shooter, the jury was instructed on felony murder and aiding and abetting liability, and Duncan herself still puts Jeffrey Herring as a participant in this robbery, knowing that there would be guns, during which Michael Northcote was shot and killed. Thank you. Thank you, counsel. Counsel, you have reserved a few minutes for rebuttal. Yes, Your Honor. I'd like to address three areas which counsel addressed. The first is that it does not matter whether Duncan names Hummel or Herring, which Your Honor was asking questions about. The second involves the use of the proffer statement. And the last would be the trustworthiness of Ms. Duncan. The government indicates that it makes no difference whether or not Duncan names Hummel or Herring, it doesn't add to her exposure. This is exactly what was discussed in Williamson. This is the example of Sam and I went to Joe's. I'm sorry. This is Sam and I went to Joe's house. A reasonable person in a declarant shoe is being linked to conspiracy. I would take it a step further in adding to that example. Sam, Bill, and I went to Joe's house to commit a robbery. There's a conspiracy between Sam, Bill, and I. Bill, if the declarant said that Bill had a gun in the car, as Ms. Duncan said, Reynolds did, here she has knowledge and that Sam pointed a gun at Joe in the apartment. Again, it's knowledge. It goes to the issue of linking her to a felony murder and that she doesn't have the affirmative defense under New York State law. Isn't she linked to a felony murder no matter who pulled the trigger? That's correct, Your Honor. But if she can legitimately say that she didn't believe or reasonably believe that anybody was armed during the commission of a felony, she would not be guilty of felony murder under New York State law and potentially under federal law if she would try it for the same. That's why it's not a neutral statement, Your Honor. I think you got this wrong, but okay. I understand, Your Honor. I respectfully disagree, but I understand. With respect to the use of the proffer, and Your Honor indicated that should have been the government's first argument, I point out that- No, I didn't indicate that. I just asked the question why, but- Yes, Your Honor. If you look at the specific facts of the cases cited by the government being Doyle and Ulbricht, in Doyle, the declarant had already accepted responsibility when he made the statements in issue, and the declarant was shifting blame away from his friend. That's why the statements were not admissible. The same thing with Ulbricht. Ulbricht had a cooperation agreement, and the statement had a little adverse effect on the declarant in that case. So I believe that whether or not a proffer statement could be used is a factor to be considered, Your Honor, but I don't think it makes it inadmissible. Lastly, Your Honor, I believe I'm out of time. You can finish your third point. Thank you, Your Honor. With respect to the issue of the trustworthiness of the declarant, by my own admission, it is strange that Ms. Duncan indicated that she was hypnotized. However, she never deviated from the fact that she observed Hummel holding the gun, pointing it in the direction of the person on the couch. I point, Your Honor, to the issue of the cooperators. William Lewis testified at this trial. He met with the government multiple times. The very first time he met with the government, he indicated that he went to the Northcote resident to buy marijuana. He didn't even learn of the nefarious nature of the act until he was on the porch, he said, and he was not responsible for the kicking in the door of the co-conspirator. Imagine if the judge had usurped the jury's role and not allowed Mr. Lewis to testify. It doesn't work like that. Of course, this is something that could be explored on cross-examination. The government is the one that was present at every single proffer with Deanna Duncan. The statements were not recorded, but they had handwritten notes of each and every meeting. They certainly were armed with the ability to bring out this evidence before the jury of any issues with the impeachment of Ms. Duncan's credibility or trustworthiness. And I submit to you, your honors, that the judge should have allowed that to happen. Thank you. Thank you. Thank you all who reserved decision.